**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE**

| | | |
|---|---|---|
| **CHARLENE ROBERTS-BANKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:19-cv-00010** |
| | ) | **REEVES/POPLIN** |
| **FAMILY DOLLAR OF TENNESSEE, INC.,** | ) | |
| | ) | |
| **Defendant** | ) | |

## MEMORANDUM AND ORDER

Plaintiff Charlene Roberts-Banks brings this action against her former employer, Family Dollar of Tennessee, Inc., alleging she was denied reasonable accommodation under the Americans with Disabilities Act (ADA) and wrongfully terminated for discriminatory and retaliatory reasons prohibited by the ADA. Roberts-Banks further alleges she was terminated in retaliation for seeking leave under the Family and Medical Leave Act (FMLA). Family Dollar moves to dismiss Banks' Complaint, or alternatively, to compel arbitration. Because there exists a genuine issue of material fact as to the validity of the agreement to arbitrate, the court will not compel arbitration of Roberts-Banks' claims.

### I. Factual Background

Family Dollar states that Roberts-Banks electronically signed a Mutual Agreement to Arbitrate Claims on March 30, 2014 through the company's online "Family Dollar

University" (FDU).  FDU contains Family Dollar's company policies and training courses.

The Arbitration Module explained what arbitration is, and explained that Roberts-Banks

and Family Dollar would be subject to an arbitration agreement.  The module provided

employees with a complete electronic version of the Arbitration Agreement to view and

print.  Family Dollar avers that Roberts-Banks reviewed the Arbitration Agreement and

clicked a checkbox to indicate that she had read all pages of the Arbitration Agreement and

agreed to its terms.    The Arbitration Agreement covers claims arising under "all

employment related laws" including claims under the ADA and FMLA.

## II.  Standard of Review

Family Dollar brings this motion pursuant to Fed. R. Civ. P. 12(b)(1) based on lack

of subject matter jurisdiction, or in the alternative, Fed. R. Civ. P. 12(b)(6) for failure to

state a claim.

Pursuant to Rule 12(b)(1), a complaint may be dismissed for "lack of subject matter

jurisdiction."  The party asserting jurisdiction bears the burden of establishing that subject

matter jurisdiction exists.  *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266,

269 (6th Cir. 1990).    Rule 12(b)(1) motions to dismiss based upon subject matter

jurisdiction consists of two types.  Facial attacks to subject matter jurisdiction merely

question the sufficiency of the pleadings, and courts should apply the Rule 12(b)(6)

standard in considering them.  *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320 325

(6th Cir. 1990).  In such a case, courts should accept the allegations in the complaint as

true and construe them in a light most favorable to the nonmoving party.  *United States v.*

*Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  Factual attacks, the second type of challenge to

the court's subject matter jurisdiction, do not question the sufficiency of the pleading's allegations, but rather contest the factual predicate for subject matter jurisdiction. *Id.* In such a case, no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Id.* In reviewing factual motions, a trial court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts. *Ohio Natl' Life,* 922 F.2d 325. Here, no hearing is necessary and the court will rule upon the record submitted by the parties.

Where the court lacks jurisdiction over plaintiff's claims pursuant to Rule 12(b)(1), the complaint also fails to state a cause of action upon which relief can be granted pursuant to Rule 12(b)(6). When all claims made in the litigation are subject to arbitration, the court may choose to dismiss the action in its entirety for failure to state a claim under Rule 12(b)(6). *Rutter v. Darden Restaurants, Inc.,* 2008 WL 4949043 at *9 (C.D.Cal. Nov. 18, 2008).

### III. Discussion

The Federal Arbitration Act (FAA), 9 U.S.C. § 2, *et seq.,* "is a Congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Asplundh Tree Expert Co. v. Bates,* 71 F.3d 592, 595 (6th Cir. 1995). It mandates that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The provisions of the FAA are mandatory. *See* 9 U.S.C. §§ 3-4. "By its terms, the Act leaves no place for the

exercise of discretion by a district court, but instead mandates that district courts shall direct

the parties to proceed to arbitration on issues as to which an arbitration agreement has been

signed." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985).

When a party asks a federal court to compel arbitration of a dispute, the court must

determine whether the parties agreed to arbitrate the dispute at issue. *Stout v. J.D. Byrider,*

228 F.3d 709, 714 (6th Cir. 2000). Because arbitration is a matter of contract, a party

cannot be required to submit to arbitration a dispute she did not agree to arbitrate. *AT&T*

*Techs. Inc. v. Comm. Workers of Am.,* 475 U.S. 643, 648-49 (1986). When a contract

contains an arbitration clause, however, doubts regarding the scope of the clause should be

resolved in favor of submitting a particular dispute to arbitration. *Id.* at 650.

In determining whether parties agreed to arbitrate a particular dispute, the court must

conduct a two-part inquiry. *Pippenger v. Merrill Lynch,* 2009 WL 2244613 at *2

(E.D.Tenn. July 29, 2009). The court must first evaluate whether a valid agreement to

arbitrate exists between the parties and, second, whether the specific dispute at issue falls

within the substantive scope of that agreement. *Watson Wyatt & Co., v. SBC Holdings,*

*Inc.,* 513 F.3d 646, 649 (6th Cir. 2008). The party opposing arbitration has the burden to

prove that there is a "genuine issue of material fact as to the validity of the agreement to

arbitrate." *Brubaker v. Barrett,* 801 F.Supp.2d 743, 750 (E.D.Tenn. 2011). Roberts-Banks

does not argue that her claims fall outside of the scope of Family Dollar's arbitration policy,

but she does argue that she never knowingly assented to waive her right to submit claims

relating to her employment to a court and that, therefore, there exists no valid arbitration

agreement between her and Family Dollar.

Arbitration agreements are "fundamentally contracts," and courts review their enforceability according to the applicable state law of contract formation." *Seawright v. Amer. Gen. Fin. Servs. Inc.,* 507 F.3d 967, 972 (6th Cir. 2007). Under Tennessee law, a valid, enforceable contract requires consideration and mutual assent, manifested in the form of an offer and an acceptance. *Ace Design Grp, Inc. v. Greater Christ Temple Church, Inc.,* 2016 WL 7166408 at *7 (Tenn.Ct.App. Dec. 8, 2016).

Family Dollar argues Roberts-Banks electronically signed the Arbitration Agreement on March 30, 2014. Like all Family Dollar employees, Roberts-Banks used a unique username and password to access FDU system's policies and training courses. Roberts-Banks was asked to complete the training module, including the Arbitration module. The Arbitration module provided employees with an electronic version of the Arbitration Agreement to view and print. Employees are instructed to click a checkbox to indicate that the employee read all pages of the Arbitration Agreement. At the conclusion of the Arbitration module, employees are instructed to click the checkbox acknowledging their review and acceptance of the Arbitration Agreement. Finally, by electronic signature, an employee acknowledges the Arbitration Agreement is supported by adequate consideration.

Family Dollar's argument, however, ignores evidence placed into the record by Roberts-Banks, which raises a genuine issue of material fact as to whether she ever saw, much less signed the Arbitration Agreement. Roberts-Banks submitted an Affidavit stating that when employees started employment, the manager who was on duty would begin the computer training under the employee's name. Roberts-Banks later did this herself

throughout her tenure for both new employees and employees who needed additional training. The password used by the training manager was a general password, which she recalls as "123456."

For new employees, the training manager would click through the introductory modules acknowledging that the module had been read, despite not reading it herself or having the employee read it. The purpose was to rapidly move through the program up to the point of the tobacco training module. The tobacco module was designed to teach employees how to avoid breaking Tennessee law when ringing up tobacco products on the cash register. Employees were actually expected to read that part of the training.

On her first day of employment, Roberts-Banks states she was trained by Store Manager Wanda Hartley. Hartley did the first part of the training under Roberts-Banks' name, including the Arbitration module. Roberts-Banks states she was brought to the computer to complete only the tobacco training module. After completing the tobacco training module, Roberts-Banks returned to the store floor to continue training on the job. When employees were performing training on the computer, they were not available to work in the store. Harvey felt that it was a better use of time for managers to certify the training and let employees do their jobs.

Roberts-Banks did not do any further computer training that day. Roberts-Banks does not dispute that Family Dollar's records show that the modules were clicked off as "done," but she was not the person viewing any of the modules other than the tobacco module. She also states that Family Dollar cannot produce a document that contains her handwritten signature to the Arbitration Agreement. Because she did not see, read, or sign

the Arbitration Agreement and she did not receive a copy of it, Roberts-Banks argues there was no agreement to arbitrate made between herself and Family Dollar.

Roberts-Banks has demonstrated that there exists a genuine issue of material fact as to the validity of the agreement to arbitrate that precludes this court from compelling arbitration of her claims. Family Dollar attempts to refute Roberts-Banks' Affidavit stating the company's scheduling and time records show Hartley did not work on the day Roberts-Banks executed the Arbitration Agreement. Moreover, Hartley denies that she completed the training for Roberts-Banks and denies that she instructed anyone else to do so.

Here, we have conflicting statements that only serve to confirm there is a genuine issue of material fact as to the validity of the agreement to arbitrate. The disputed evidence contained in the record requires a determination of the testifying witnesses' credibility. Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986). Family Dollar fails to establish the existence of a valid agreement to arbitrate that would bind Roberts-Banks and, accordingly, the court must deny Family Dollar's request that Roberts-Banks be compelled to pursue her claims in arbitration.

## IV. Conclusion

For the reasons discussed, Family Dollar's motion to compel arbitration and to dismiss [R. 9] is **DENIED.**

Family Dollar's motion to stay discovery [R. 19] is **DENIED as moot.**

**IT IS SO ORDERED.**

_____
**CHIEF UNITED STATES DISTRICT JUDGE**